GROSJEAN, State Collector of Revenue, v. POMES.

No. 17181.

Court of Appeal of Louisiana. Orleans.

June 12, 1939.

David. M. Ellison, Atty. Gen., E. Leland Richardson, Justin C. Daspit, Fred Blanche, and Maurice B. Gatlin, Sp. Assts. to Atty. Gen., and Albert S. Rose, of New Orleans, for appellant.

E. B. Charbonnet, Jr., of New Orleans, for appellee.

WESTERFIELD, Judge.

This is a suit by the Collector of Revenue of the State of Louisiana against F. E. Pomes, in which the sum of $541.31, is claimed to be due the State of Louisiana as taxes, plus 20% delinquency penalty and 10% attorneys' fees.

There was judgment below in favor of defendant dismissing plaintiff's suit and plaintiff has appealed.

The petition alleges that the amount claimed is due by defendant as a dealer in cattle for the period between April 1st, 1936, and July 27th, 1938, under the provisions of Act No. 17 of 1932, as amended by Act No. 33 of 1934 and Act No. 16 of 1936, Section 1 of which reads as follows:

"Every person, firm, corporation, partnership or association of persons engaged as manufacturers, wholesalers, jobbers, or engaged in both wholesale and retail business of selling, handling, or exchanging butter, oleo, oleomargerine or other butter fat substitutes, cheese, ice cream, condensed milk and evaporated milk, powdered milk or manufactured milk products, beef and veal meats or other beef or veal by-products of the slaughterhouse or packing house business or industry arising from the handling of beef and veal meats, shall pay a tax, in addition to any tax already imposed thereon for the privilege of engaging in such business of, one and one-quarter percentum (1¼%) of the gross receipts from the sale of the commodities enumerated based on the wholesale prices referred to herein."

The defendant answered admitting that certain cattle, of which he was the nominal owner, had been slaughtered by the New Orleans Cooperative Butchers Abbatoir during the period for which taxes are claimed, but averred that each and every one of the cattle so slaughtered belonged to another and "were never dealt in or sold by defendant, whether as a manufacturer, wholesaler, jobber, or wholesaler and retailer, and that the owner of said slaughtered cattle and calves sold same at retail alone". Subsequently defendant filed a supplemental answer amending a paragraph of his original answer so as to set forth in detail the owners of the cattle which were slaughtered in his name, and reiterated the statement in his original answer to the effect that he was without any interest of any kind in the cattle slaughtered in his name.

Upon the trial of the case plaintiff's counsel objected to the introduction of any evidence by defendant in support of his supplemental answer on the ground that it was not filed at the same time that the original answer was filed as required by Act No. 14 of the Second Extraordinary Session of 1935, an act designed to facilitate the trial of all claims by the State for tax-

es, excises and licenses, etc., section 2 of which reads as follows:

"That all defenses, whether by exception or to the merits, made or intended to be made to any such claim, must be presented at one time and filed in the court of original jurisdiction prior to the time fixed for the hearing, and no court shall consider any defense unless so presented and filed. This provision shall be construed to deny to any court the right to extend the time for pleading defenses; and no continuance shall be granted by any court to any defendant except for legal grounds set forth in the Code of Practice."

The objection was overruled and the action of the Court in this respect is made one of the grounds upon which plaintiff's counsel seek a reversal of the judgment below.

Complaint is also made of the action of the trial court in refusing to give the case preferential consideration in accordance with the terms of the Act of 1935, which provides that the State's cases shall be tried "by preference and priority over all other cases, in term time or vacation, in open court or in chambers". Counsel says that on February 28th, 1939, when the case was fixed for trial the court refused to grant a preference to the State on the ground that there was an open case on the docket for that day.

The final contention of appellant is that the case was improperly decided upon its merits.

The first point raised by the plaintiff—that with respect to the filing of the supplemental answer—is not well founded, because the requirement of the act that all defenses be presented at one time does not mean that supplementary pleading of an explanatory nature cannot be filed at a later date in accordance with the general rules of pleading. There is nothing set up in the supplemental answer, by way of defense, which was not contained in the original answer, though in less detail and more succinctly alleged. We might add that if we were to exclude the supplementary pleading from all consideration, the issues presented would not be affected.

The action of the trial court in declining to give the case preferential consideration cannot be reviewed at this time and certainly not by this court, because we have no supervisory jurisdiction. The only remedy which plaintiff might have invoked would have been a timely appeal to the supervisory jurisdiction of the Supreme Court.

Coming now to the merits of the case, the evidence shows that the defendant was engaged in the business of hauling fresh meat from the Abbatoir to retail dealers and that upon occasions he acted as a buying agent for some of his customers, five or six out of about forty; that for these customers he would buy cattle in his own name, have them slaughtered and delivered to the parties for whom they were bought without any charge whatever for the service. The act under which this tax is sought to be collected provides:

"Every person, firm, corporation, partnership or association of persons engaged as manufacturers, wholesalers, jobbers, or engaged in both wholesale and retail business of selling, handling, or exchanging * * * beef and veal meats or other beef or veal by-products of the slaughterhouse or packing house business or industry arising from the handling of beef and veal meats, shall pay a tax, in addition to any tax already imposed thereon for the privilege of engaging in such business of, one and one quarter percentum (1¼%) of the gross receipts from the sale of the commodities enumerated based on the wholesale prices referred to herein".

The contention of the plaintiff is that the defendant, Pomes, was engaged in the business of handling meat and that he also acted as a broker in meat and is, therefore, subject to the tax of one and one quarter per centum of his gross receipts. The difficulty with this argument is that a "handler" of meat products is not taxed by the Act nor do we find the word "broker" mentioned as one of the parties subject to the tax, but Pomes, in any event, was not a broker. The act taxes every person doing business as a manufacturer, wholesaler, jobber or one engaged in both the wholesale and retail business of selling, handling or exchanging, etc. Handlers of meat products are not taxed, but only manufacturers, wholesalers, jobbers and wholesalers and retailers who handle meat products. It matters not whether the meat products were handled if they were not handled in one of the several capacities mentioned in the act. If the defendant had engaged in both the wholesale and retail business of selling, handling or exchanging meat products, he would come within the terms of the act, but there is no pretense that he was a wholesaler and re-

tailer, but only that he handled meat products. He, therefore, is not covered by the act under which the tax is sought to be collected.

It is also difficult to see how one and one-quarter per centum of the gross receipts of the defendant "from the sale of the commodities enumerated based on the wholesale prices referred to herein" could be computed upon the business of the defendant since there was no gross receipts from the sale of meat because there were no sales. All that Pomes did was to act as the agent of certain customers in the purchasing of cattle as an accommodation. It appears that Pomes had his headquarters near the Abbatoir and those customers, for whom he acted in this capacity, whose place of business was distant from the Abbatoir, found it a great convenience to avail themselves of his service.

The evidence clearly establishes the contention of Pomes that he, at no time, slaughtered cattle for his own account and dealt in the meat products resulting therefrom as a wholesaler and retailer. He was a meat handler, as the learned counsel for the collector contends, in that he handled meat for his customers who paid him for hauling it from the Abbatoir to their place of business. The act relied on imposes no tax upon a business such as defendant is engaged in.

For the reasons assigned the judgment appealed from is affirmed.

Affirmed.